ASA BATES <em>vs.</em> ALVAN CARTER.

A purchaser of personal property at a Sheriff's sale, will hold the same, although the officer makes no return on the execution, that previous to the levy upon the same, he demanded the money of the debtor. *Sed Quere* as to real estate.

In such case, it seems that the purchaser will acquire a good title, although the officer is liable to the debtor by reason of defects in his return on the execution.

Where personal property, purchased at a Sheriff's sale, is left in the custody of the execution debtor, it is not liable to attachment for his debts.

This case comes up here from the County Court upon exceptions taken to the acceptance of a report of Referees there made and objected to by the defendant. A further statement of the facts in the case, and the points relied on by counsel, will be found by a reference to the opinion of the Court.

*Argument for the defendant.*—The defendant insists, that the plaintiff, to support his action, must show that the Constable's sale, under which he claims title, was a valid sale; and to make it a valid sale, it must appear from the officer's return.

1. That he repaired to the debtor's usual place of abode, and demanded of such debtor, the sum in debt, damages or costs, contained in such execution.—Stat. 208.

In a levy of an execution, a demand of the debtor per-

WASHINGTON,.
March,
1831.

Bates
vs.
Carter.

sonally, or at his usual place of abode, is an essential prerequisite : and in delivering the opinion of the Court, in the case of *Dutton* vs. *Tracy*, (4 Con. 365) *Hosmer*, Ch. J., said, "The law explicitly requires, that the officer shall repair with the execution put into his hands for service, to .the debtor's usual place of abode, and make demand of the debt, as the first step of his proceeding : The object of this enactment was, to give the debtor an opportunity of making payment in prevention of unnecessary costs ; and if he could not do this, to confer on him the power of exposing such goods and chattels for sale for raising the money requisite to satisfy the execution, asshould be least injurious to him : This is a matter '*stricti juris*,' and it is only after the defendant neglects or refuses, on such demand, that the officer is authorized to seize property to satisfy such execution.

2. That the officer, after having taken the property, advertised the same, on the sign-post of the town in which it was taken, (or such other place as was agreed upon by the officer and debtor) to be sold at *public vendue* at least fourteen days before the sale.---Stat. 209.

A general return, that the officer, after having posted the property for sale as the law directs, sold the same, is *not sufficient to pass an interest in the property to the purchaser*.---*Davis* vs. *Maynard*, 9 Mass. 242.---*Howe* vs. *Starkweather*, 17 Mass. 240.

3. That the debtor having neglected, for the fourteen days, to redeem the property by paying the damages and costs, the officer sold the same at *public vendue* to the highest bidder, at the time and place appointed in said advertisement for the sale of said property.---Stat. 209.

4. That having sold the property, the officer made return of said execution with his doings thereon, particularly describing the goods and chattels taken and sold, and the sum for which *each article* was struck off.---(Stat. 209.) This provision of the statute is peculiarly calculated to prevent the officer from practicing fraud, either upon the debtor or purchaser, by making a general return of his sales in gross sum, and should be most strictly adhered to. To vest an interest in the purchaser in property sold on execution, the officer must make a return, that would be

WASHINGTON, *March*, 1831.

Bates
*vs.*
Carter.

sufficient to justify himself, and this return must be made in *writing*, and parol testimony is inadmissible to aid any defect in such return (*Metcalf* vs. *Gillet*, 5 Con. 400); for the return of the officer is the legal and only evidence that the proscriptions of the law have been complied with.

A written notice by the officer, stating particularly his proceedings, is necessary to vest in any purchaser under an execution, a property in the goods of the debtor; and he cannot make title to the goods, without showing by the return, that the directions of the law have been observed in the sale.—*Hammat* vs. *Wyman et al.* 9 Mass. 138.

When the law requires the return of an officer to be in *writing*, the *whole* of the return must be in writing; and parol evidence cannot be admitted to amend it.—*Davis* vs. *Maynard*, 9 Mass. 242.

When an officer returned on a warrant of distress, that he advertised the goods distrained *twenty-four hours* before sale, he was not permitted to give parol testimony in an action of trespass against him for taking the goods, that he in fact advertised them *forty-eight hours* before the sale.— *Purrington* vs. *Loring*, 7 Mass. 388. As it was his duty to return his doings in writing, he could not justify by parol return: nor could parol evidence be admitted to vary a written return; and the officer was therefore made liable as a trespasser *ab initio*.

In *Williams* vs. *Amory*, 14 Mass. 20, *Parker* Ch. J. said, "that every thing made necessary by the statute to pass the property either in land or chattels, must appear by the return of the officer to have been done."

When a Sheriff returns upon an execution that he has appointed *two* of the appraisers of real estate to be levied upon (when the debtor has a right to appoint *one*, unless he refuses so to do,) the Sheriff must also return that the debtor refused to choose one, or the levy will be void.— *Eddy* vs. *Knapp*, 2 Mass. 154.—*Mather* vs. *Chapman*, 6 Con. 54.

The acquisition of title by execution being a proceeding *in invitum*, the requisites of which are prescribed by positive law, a strict compliance with the requisites is indispensable to a transfer of title.—*Mitchel* vs. *Kirtland*, 7 Con. 229.—*Hobart* vs. *Frisbie*, 5 Con. 592.

By requiring the officer to pursue the directions of the Statute strictly, in taking and disposing of property on execution, the purchaser cannot be subjected to loss. But if the officer neglects to pursue the requirements of the law, so that the purchaser acquires no title, the officer would be liable in an action on the case for neglecting to make a sufficient return, and the purchaser would recover his damages.—*Hammat* vs. *Wyman*, 9 Mass. 138. The same would be the case, when an officer, through mistake, sold the property of a third person, instead of the debtor, the purchaser could acquire no title, as against the actual owner, though the officer might have pursued all the steps of the law necessary to convey a good title, had the property belonged to the debtor. If an officer, in either taking or disposing of property on execution, pursue such a course as would render him a trespasser *ab initio*, a purchaser under him could acquire no title; for the officer being but a trespasser himself, could convey none, upon the established principle that "no one can transfer a greater right to another than he has himself."

Again, the defendant insists, that the officer, in the case at bar, could not have justified under his return, in an action of trespass against himself, but would have been adjudged a trespasser *ab initio*, for the following defects apparent upon the face of the return :

It does not appear from the officer's return,

1st, That he demanded of the debtor, the sum in debt, damages or costs, contained in the execution; and that the debtor neglected or refused to pay the same before he seized the property.—

2d, That he forthwith advertised the same on the signpost of the town in which they were taken, (or that he and the debtor agreed upon any other place) to be sold at *public vendue.*—

3d, That said mare and waggon were posted for sale fourteen days before the sale.—

4th, That the debtor neglected to redeem said mare and waggon.—

5th, That he sold the mare and waggon at the *time* and *place* at which they were advertised to be sold.—

6th, That he sold the mare and waggon at *public vendue.*-

WASHINGTON,
March,
1831.

Bates
vs.
Carter.

WASHINGTON,
March,
1831.

Bates
vs.
Carter.

7th, That he returned upon the execution the *sum* for which either the mare or waggon was struck off.—See form of return, *Backus* Sheriff, 347.

*Argument for the plaintiff.*—1. All the objections to the Constable's return, excepting the one that it does not appear what each article was sold for, are directly overruled by the case of *Battie* vs. *Robin*, 2 Vt. Rep. 181; and this objection is virtually disposed of by that dicision. The statute, it is true, requires, that the officer should state in his return, for what sum each article was struck off; but this is required for the benefit of the debtor, to protect him against any collusion or fraud in the sale; as the same section, which contains this requisition, provides that the debtor may recover of the officer treble damages for the sum defrauded.—Com. Stat. 207, Sec. 1. The debtor perhaps might maintain an action against the officer for an omission to state this fact; but the omission cannot prejudice the rights of a purchaser under the Sheriff's sale. The requisition is indeed to be regarded as directory, as the statute does not declare the sale void in case this fact does not appear from the return; and consequently the sale is valid, so as to vest the property in the plaintiff.—3 Mass. 230. The decisions in Massachusetts and Connecticut, which are relied upon by the defendant, it is believed, have not been followed in this State. Our statute requires the execution to be returned within sixty days, (Comp. Stat. 87, Sec. 75); and when the judgement is over fifty-three dollars, in one hundred and twenty days.—Stat. 137, Sec. 3—do. 209, Sec. 1. This seems to be equally imperative with the other requisition; but it has never been deemed absolutely necessary, in order to vest the property in the purchaser, that the execution should be filed in the office whence it issued at the return day.

In *Ingersoll* vs. *Sawyer*, (2 Pick. R. 276) it was said by *Parker*, Ch. J., that "it is the duty of the officer who has made service of any precept, to make return of it according to its terms; and an action will lie against him if he neglects this duty. But if he, as a minister of the law, has executed it properly, the purchaser will not be defeated

of his title, merely because the execution is not filed in the Clerk's office on the return day."

WASHINGTON,
March,
1831.

Bates
vs.
Carter.

2. A purchaser at a Sheriff's sale is not bound to show that the Sheriff pursued every requisition of the law. This title cannot be defeated for error or irregularity in the judgement or execution, or on the ground that no levy was made till after return day.—1 John. Cas. 133.—13 John. R. 97.—8 John. 361.—6 John. 44. So a purchaser is protected, although the judgement be rendered for error.—Dyer, 363.—Cro. Jam. 246.

In *Vesy*, 195, it is said, "however questionable the proceedings are, if the writ is not void, the purchaser will gain a title under the Sheriff; for it would be very hard if it should be at the peril of the purchaser under a *fieri facias*, whether the proceedings were regular or not.—2 Tidds's Practice, 935. So it may be said in the present case, that it would be extremely hard for the plaintiff to lose his title to the property in question, because of the neglect of the officer, inasmuch as he had no control over the officer on execution, and it was out of his power to remedy the defect. Indeed, to hold this objection as fatal, will, it is believed, work a serious injury to judgement debtors; for there is hardly any one who would bid off property at a Sheriff's sale, if knew he would not be protected in his purchase if the proceedings of the Sheriff were irregular.

3. By the seizure of chattels on execution, the property is divested, and is in the Sheriff; and if he seize to the value, the execution is satisfied, although no return be made.—1 Lev. 282.—6 Mod. 290.—2 Roll. 57.—4 Mass. R. 402. And by analogy, in this case, by the seizure the property vested in the officer, and his subsequent sale, however irregularly made, would convey the title.

4. The parol evidence offered and admitted, was proper to show a sale in fact, and sufficient to vest the title in the plaintiff. The statute of New-York contains requisitions similar to those of our statute for the sale of personal property on execution. Yet a sale of personal property on execution may there be proved by parol.— 6 John. R. 44. So where a statute points out a particular mode of levying an execution, and it is not followed, the

WASHINGTON,
March.
1831.
common law may be pursued.—1 Harris' Dis.—McHenry's R. 434.

Bates
vs.
Carter.

The opinion of the Court was pronounced by

PADDOCK, J.—As this case is presented by the report of the referees, it does not readily appear in what manner the defendant became connected with the property; but from the arguments of counsel, and the copy of an officer's return on a former execution, we gather the following as facts, to wit: That one *Peter Nichols*, a Constable of Barre, had in his hands for collection, an execution in favor of *Daniel Spring* against *Carver Bates*; upon which execution appears the following return:

"Washington County, *ss.* Barre, August 21, 1827. I "then served the within execution, when turned out by "plaintiff, on one sorrel mare and one horse wagon; posted "the same for sale as the law directs, at the dwelling-house "of *James Hale*, in Barre, and on the fourth day of September, 1827, sold said mare and waggon to *Asa Bates* for "$18, he being the highest bidder.

"Attest,        PETER NICHOLS, *Constable.*"— That *Asa Bates* took the mare to *Carver Bates* and left her in his possession; after which, *Alvan Carter*, acting as Sheriff's Deputy, having a process against *Carver Bates*, and finding the mare in his possession, attached her thereon; for which, *Asa Bates* has brought this action.

The counsel for the defendant has argued the cause, and rested the defence wholly upon the insufficiency of the officer's return upon the execution, *Spring* vs. *Carver Bates;* first, that it does not appear that the officer made a demand upon the execution debtor for the money, before levying upon the property in question. Whatever may be the decision in cases where real estate is set off, we are not prepared to say that the officer must in all cases demand payment of the execution debtor before he can logally levy on personal property; such a requirement would very frequently occasion the loss of the debt; for while the officer would be in pursuit of the debtor, the property might be concealed or conveyed beyond his reach.

Several other exceptions were insisted upon by the defendant, which might be urged with more propriety, were

WASHINGTON,
March,
1831.

Bates
vs.
Carter.

the execution debtor prosecuting *Peter Nichols*, the Constable; but they can have but little if any application, when the right acquired by the purchaser, to the property sold, is called in question : Very few people would risk their money, were the title to their purchases to depend upon the legality of the officer's proceedings; and for that reason, the policy of the law is to protect purchasers: and in this particular, there is an analogy between a Sheriff's sale, and a sale *in market overt*.

Had *Asa Bates* purchased the horse of *Carver Bates*, and left him in his possession, according to the settled law of the State, he would have been liable to the attachment of the creditors of *Carver Bates ;* and it is equally well settled, that where a purchaser at a Sheriff's sale leaves the property in the custody of the execution debtor, it cannot be so taken ; because, every presumption of fraud is done away, by the open, public and notorious sale by the officer. —*Kidd* vs. *Rawlinson*, 2 B. & P. 59.

In the present case, the Court consider that *Asa Bates* acquired a title to the horse in question, and his leaving him in the possession of *Carver Bates* after the sale and purchase, did not make him liable to the attachment of *Carver Bates*' creditors ; therefore, the judgement of the County Court must be affirmed.

Judgement affirmed.

*Smith & Peck*, for plaintiff.
*Kinsman & Upham*, for defendant.