WINDSOR,
February,
1838.

ELI S. GATES *v.* ASA GAINES.

Sales of personal chattels, must be accompanied and followed by a visible, substantial change of possession, in order to perfect them as against the creditors of the vendor.

But sheriffs' sales are an exception to this general rule. And it does not affect the character of such sales, that the creditor is himself the purchaser, or that the sale is made by a person specially deputed to levy the execution, or that no return is made upon the execution.

The validity of the sale does not depend upon any thing subsequent to the sale, and if the officer makes no return, the sale may be proved by parol.

But the return of the officer, if made any time before trial, is *prima facie* evidence of the fact of the sale, although another sale of the same property intervenes before the return is made.

TROVER, for two oxen, one mare and one calf.

Plea—Not guilty, and notice justifying the taking of the property by the defendant, as constable of Pittsford, duly authorized to serve process throughout the county of Rutland, by virtue of two executions, one in favor of Samuel B. Spalding and George T. Hodges, and the other in favor of Amos Holt, and both against James Dain.

Upon the trial, in the county court, the plaintiff offered in evidence an execution in his favor against said Dain, for fifty six dollars damages, and twenty-five cents costs, issued on a judgment rendered by Richard Eastabrook, jr., a justice of the peace, in and for the county of Rutland, upon the voluntary confession of said Dain, dated the 18th day of June, 1834,—which execution one Charles Shedd, was, by said justice Eastabrook, at the request and risk of the plaintiff, authorized to levy and collect,—together with the return upon said execution thereto attached, showing a sale of said mare and colt, by virtue of said execution, to the plaintiff, on the third day of July, 1834, which return was regular on the face of it, and was sworn to by said Shedd on the first day of June, 1836. The plaintiff also offered in evidence another execution in his favor against said Dain, issued on a judgment rendered upon the confession of said Dain, by said justice Eastabrook, on the same 18th day of June, 1834, for $99,00 damages and twenty-five cents cost, which last mentioned execution the said Shedd was, also, by said justice Eastabrook, at the request and risk of the plaintiff, authorized to levy and collect, with a regular return of said Shedd, there-

to attached, showing a sale of the oxen and mare to the plaintiff, by virtue of said last mentioned execution, on the same third day of July, 1834, which return was also sworn to by the said Shedd, on the same first day of June, 1836. The plaintiff introduced evidence tending to prove that said executions were the original executions issued by said justice Eastabrook, and that the defendant took the property in question. The executions, offered by the plaintiff, were not objected to.

The defendant, to maintain the issue on his part, offered in evidence attested copies of the two executions, specified in the notice accompanying his plea, and copies of the executions introduced by the plaintiff, upon the back of which executions were endorsed the fees for levying the same, and also the following memoranda, viz., on the first described execution,

| | |
|---|---|
| " One cow | $12, |
| " One mare and colt | 48, |
| | 60, |
| | 45, |
| | $105." |

And on the other execution, "one yoke of stags, at forty-five dollars, also one mare and colt." The defendant introduced said Eastabrook as a witness, whose testimony tended to show, that said Shedd never returned said executions to said justice, until about the month of March following their date, and that they were never in the witness' possession, with any other return thereon, than the fees for levying them, and the memoranda above set forth; that about the month of April following, the plaintiff, with witness' consent, took said executions into his own possession, and that they had never been returned to him.

The defendant introduced further testimony, tending to show, that Shedd found said property in said Dain's possession, and drove it to Shedd's house, and afterwards the plaintiff and Dain went before said justice Eastabrook, and said Dain confessed said judgments in favor of the plaintiff; that after the sale of said property by said Shedd, as specified in his said returns, it was taken back to the same farm

whence it had been taken, being the farm where said Dain then lived, and continued to live, until it was taken by the defendant; that said property was kept there until two or three days previous to the time when the defendant took it by virtue of the executions in his hands, when it was attached by one Rufus Graves, on a writ against the said Dain and Eli S. Gates and others, and was driven to one Woodward's in Sherburne, and two or three days afterwards, was driven back by said Graves to said Dain's, the plaintiff in said writ, upon which it had been attached, having directed said property to be returned ; that said Dain refused to receive it, saying, he was out of hay, and that Graves took the property to Woodward's, where the defendant found it and took it, as before mentioned.

Upon this evidence, the defendant requested the court to charge the jury ; that if they found that the returns of said Shedd, made upon said executions, were not made until after the executions were taken from said justice Eastabrook, by the plaintiff, the sale of the property by Shedd to the plaintiff could not be placed upon the same footing as Sheriffs' sales, and that the continued possession of the property by Dain, after the sale, rendered the sale fraudulent in law, as to creditors.

But the court charged the jury, that the sale of the property by Shedd to the plaintiff was to be considered as a sale by a sheriff, in reference to the question raised from the continued possession of the property, by Dain, after the sale, but that all the facts relied upon by the defendant, so far as proved, were proper for the jury to consider in determining whether the sale was fraudulent in fact, or not.

The jury returned a verdict for the plaintiff, and the defendant excepted.

*T. Hutchinson,* for defendants.

Sales by virtue of executions, made by an authorized person, like the sales in question, ought not to be put upon the same footing as sales by a sheriff.

Sheriffs are known officers of the law, sworn to act impartially and bound to return the precepts by them executed.

When their returns are made, they become matters of record, and from such record all persons interested may know what has been done. Hence, a sheriff's sale passes the

property, and if the purchaser permits the debtor in the execution to keep possession of the property, such possession does not render the sale fraudulent in law, as to creditors. *Batchelder* v. *Carter*, 2 Vt. R. 168.

But to extend this doctrine to a case like the one under consideration, would have the effect of making it a patent machine, for making fraudulent conveyances. The case shows that the person authorized to levy and collect the executions, in favor of the plaintiff against Dain, never made any return of his doings thereon to the justice, who issued them. For aught that appeared of record, at the time of the levy by the defendant, alias executions might have been issued on the judgments in favor of the plaintiff. It did not appear from the records of the justice, that the judgments or executions had ever been paid or satisfied by a sale of the property in question, or of any other property. Such being the fact disclosed by the record, and the property being in the possession of Dain, from the time of the sale by Shedd to the time of the taking of it by the defendant, the plaintiff never having taken it into his own possession, we insist, that the doctrine of *fraud in law* is as applicable in this case, as it would have been, had the sale been a private one from Dain to the plaintiff.

*Julius Converse* and *Edwin Hutchinson,* for plaintiff.

The defendant was not entitled to the instructions claimed by him below, for two reasons ;

I. The property, when attached by defendant, was neither in the actual nor constructive possession of Dain, the judgment debtor.

II. If it were, plaintiff's title to the property is derived from a purchase, at what is tantamount to a sheriff's sale on execution , where, from the notoriety of the transaction, no change of possession is necessary.

Upon the first point, the request of defendant involved a feature, which we are not aware of having existed in any reported case, where the title of an otherwise *bona fide* purchaser has been defeated, upon the ground of *fraud in law*, viz. it predicates *constructive fraud* upon a *constructive possession* in the judgment debtor, at the time of the attachment, under which defendant justifies. The property was found by defendant, neither in the actual possession of Dain,

the judgment debtor, nor of the present plaintiff, but it was then in the keeping and care of a third person, one Woodward, where it had been placed by still another officer upon an attachment against them both, which was eventually abandoned; and where, it is not pretended, that Dain had, or ever had, any right or possession whatever. If the property was at that time Dain's in fact, then was it constructively in his possession, after the relinquishment of that attachment; but if the plaintiff's, by fair purchase, which the jury have found, then was the possession, at the time of the taking by the defendant, by construction of law, in the plaintiff.

Upon the second point, no change of possession was necessary to perfect the plaintiff's title. The instructions most favorable to himself, which the defendant could with any plausibility have claimed of the court below, would have been, that, inasmuch as Shedd, of whom plaintiff purchased, was authorised to act at *his risk* and request, in order to recover in this action, the plaintiff was bound to show that Shedd pursued all the steps, in the levy and sale by him to plaintiff, which would have been necessary to perfect a title in plaintiff, had the sheriff of the county had the execution, and conducted the sale. Surely, it will not be pretended, that the law is so unreasonable as to require *more* accuracy and formality of proceedings at the hands of an authorised person, in the levy of an execution, than it does of a sheriff.

The case shows the sale to have been made by Shedd to plaintiff, by virtue of executions, regularly issued, upon regular judgments, the property levied upon and posted, and the sale conducted, in every particular, according to the statute; and no objection is taken to the proceedings, except that Shedd, after the sale, neglected to draw out upon paper, regular and formal returns of his doings, and to return the same, with the executions, into the office of the justice issuing them, until after the property was attached by the present defendant.

But, an authority in the officer to sell at the time, and an actual sale by him at public auction, on execution, advertised in legal form, vests the title, *eo instanti*, absolutely in the purchaser—not liable afterwards to be divested by any act or omission of the officer. Besides, the officer's return is,

in no sense, essential to, nor does it constitute any part of the title of the purchaser, at a sheriff's sale. And, as it regards the debtor, the debt is discharged by the levy, and cannot be revived against him, whether the officer mis-apply the money, or make a return of his doings, or not. *Kid* v. *Rawlison*, 2 Bos. & Pul. 59. *Boardman* v. *Keeler*, 1 Aik. R. 158. *Jackson* v. *Sternbergh*, 1 Johns. Cases, 155. *Beattie* v. *Robins*, 2 Vt. R. 183. *Bates* v. *Carter*, 5 do. 602. *Janes, admr.* v. *Martin*, 7 do. 96. *Ladd* v. *Blunt*, 4 Mass R. 403.

The opinion of the Court was delivered by

REDFELD, J.——In this State we have considered the doctrine as settled law that a sale of personal chattels is not perfected, as against the creditors of the vendor, until after delivery, and that possession must not only *accompany* but *follow* the sale, and that the want of this change of possession is sufficient, *per se*, to avoid the sale as against creditors. Hence, in the present case, the sale to plaintiff must be considered void, and the judgment below erroneous, unless it is an exception from the general rule.

The court below treated it as a sheriff's sale. This we have long considered an exception to the general rule. The doctrine of *Kid* v. *Rawlinson*, 2 Bos. & P. 59, was adopted as the law of this state, in *Boardman* v. *Keeler*, 1 Aikens' R. 158, and *Bates* v. *Carter*, 5 Vt. R. 602. The doctrine of *Watkins* v. *Birch*, 4 Taunton, 822, that the creditor may be himself the purchaser at the sheriff's sale, is also recognized as law in this state. The only question, then, to be determined here, is whether this sale comes within the exception of " sheriffs' sales."

The court are unanimous in the opinion, that this must be considered as coming fully within the exception to the rule. The exception is based upon the publicity and notoriety of the sale in the first instance, as being a transaction of so notorious a character as not to require to be farther published by that visible, substantial change of possession which is required in other cases.

And secondly, this is a sale or change of title by operation of law, and the law will not impute fraud to its own officers and ministers. In both respects, the present case seems sufficiently to partake of the character of a sheriff's

sale. It would hardly be contended, that a sale, made by a constable or any other public officer, was not within the exception. And the statute in express terms gives the person, specially appointed to serve process, all the *powers* of the sheriff. His acts, then, in law are of the same *efficacy*.

It is true, that the appointment is made at the request and the " *risk*" of the creditor, and so, of the acts of the sheriff, it may in one sense be said, that if he does not conform to the law, the creditor may fail to acquire title to the property, but for this omission of duty the sheriff is liable at all events, whereas a person specially deputed is only liable for gross neglect.

But it is said, the manner of the return should avoid the sale. This no doubt was worthy of consideration, upon the question, whether the sale was *bona fide*, but we think does not change the character of the sale. The title of the purchaser at a sheriff's sale is not affected by the after doings of the sheriff. At the moment of the sale, the title vests, and whether the officer returns the precept or not, the judgment, to the amount of the sale, is satisfied, and the title cannot be divested by any neglect of the officer. It was not essential to the plaintiff's title, that he should offer the return of the officer. If the sheriff had a legal execution, and levied upon and sold the property, and made no return, the sale might be shown by parol. But the return being made, although out of time, would be *prima facie* evidence of the sale, as it was considered by the county court.

Judgment affirmed.