Hon. JAMES BARRETT,
Hon. BENJAMIN H. STEELE, } Assistant Judges.
Hon. JOHN PROUT,

---

### WILLIAM BRAYTON *v.* JABEZ G. ROCKWELL.*

*Promissory Note.  Statute of Limitations.  New Promise.*

B held notes against R upon which the statute of limitations had run, and asked R to renew them by giving a new note, or by endorsing something on them. R declined to renew the notes in either manner, but said, "I will come up soon and have a general settlement of accounts, and if all accounts are all right, other matters will be all right;" and upon another occasion he said to B, "we have a long string of accounts to look over; if I find that all right and satisfactory, the notes will be all right." *Held,* that these declarations made by R, taken in connection with his refusal to renew the notes, are not sufficient to show any acknowledgment of an existing liability, with a willingness to remain liable, or from which to imply a promise to pay the notes.

The naked acknowledgment of an existing indebtedness is not sufficient. The acknowledgment must be of such a character or made under such circumstances as to indicate or be consistent with a willingness to be held liable for the debt.

---

* Heard at the January term, 1868.

THE two cases by the above title upon the docket of the county court were heard together. This bill of exceptions applies to both.

The actions were both instituted March 12, 1866, each to collect a promissory note. To each the defendant pleaded the general issue and the statute of limitations, and the plaintiff to the special plea replied a new promise. Trial by the court, at the August term, 1867, STEELE, J., presiding.

The plaintiff introduced in evidence the following notes, conceded to have been signed by the defendant: One note dated March 19, 1853, in favor of the plaintiff or bearer, for $117, payable one day from date ; one note dated April 20, 1855, in favor of the plaintiff, for $48.57, payable one day from date ; one note dated January 7, 1851, in favor of James McEwin or order, for $11, payable " on or by January 1, next, with use," which was indorsed to the plaintiff by the payee.

In May, 1862, the plaintiff discovered that the statute had run on the notes. He made a statement or schedule of them, with the interest reckoned up to May, 1862, and sometime in that month, when the defendant happened in the plaintiff's store, the plaintiff showed the defendant the notes and the schedule, and asked him to renew them, by giving him a new note or by indorsing something on them, and told the defendant he did not feel safe while they remained as they were. The defendant declined to renew the notes in either manner, but said : " I will come up soon and have a general settlement of accounts, and if all accounts are all right, other matters will be all right." There was no " other matters" between the parties, except the notes in question. The plaintiff was a merchant, and sometimes was in trade alone and sometimes with a partner. The store accounts of the plaintiff, and of the plaintiff's firm, against the defendant, amounted to over seven hundred dollars.

In the spring of 1863, the plaintiff again asked the defendant to take up these notes, and give a new note, or to endorse something on them, so as to revive them. The defendant again refused, but said, " We have a long string of accounts to look over. If I find that all right and satisfactory, the notes will be all

right." When the defendant paid the plaintiff anything, as he did occasionally, he directed it to be applied on account. The defendant intended to give the plaintiff all the encouragement that he could safely that the notes would be paid, but in his language he meant to be very careful not to say enough to make him liable to pay them, but to retain the right in himself to repudiate them or assume them, as he should think proper, on settlement of the account. He intended by his language to put the plaintiff off, and to encourage him to think he would make a valid promise when the accounts should be exhibited to his satisfaction.

Subsequently, in 1865, the plaintiff presented his account. The defendant immediately remarked to the plaintiff, that he wanted him " to throw off $100 of his account, and as for the notes, he should not pay them at all." The defendant claimed to be dissatisfied with the account, and found a great deal of fault with its size, but did not complain of any particular item or items. The account was correct, and was paid as presented, after being sued. The defendant really had no dissatisfaction with it, except a general dissatisfaction at having an account of that magnitude presented to him for payment. Before the account was sued, he had settled it so far as to agree to pay it, and he made no defense to the suit. There was no very substantial discrepancy in the testimony of the parties as to the language used on these occasions, or as to the circumstances under which it was used. The question was as to its legal effect. The court decided that it did not amount to a new promise, and rendered judgment for the defendant to recover his costs, to which the plaintiff excepted.

*Giles Harrington* and *Edson & Rand,* for the plaintiff, cited Starkie on ev., vol. 2, 37 ; *Moore* v. *Horrican,* 11 Vt., 490 ; *Phelps* v. *Stewart & Wood,* 12 Vt., 263 ; *Williams* v. *Finney,* 16 Vt., 297 ; *Paddock* v. *Colby,* 18 Vt., 485 ; *Caruth* v. *Page,* 22 Vt., 179 ; *Burton* v. *Stevens,* 24 Vt., 131 ; *Cooper* v. *Parker,* 25 Vt., 502 ; *Hill* v. *Kendall,* 25 Vt., 528.

—— ——, for the defendant.

The opinion of the court was delivered by

PIERPOINT, C. J. The only question presented by the bill of exceptions is, whether what was said by the defendant to the plaintiff at their interviews in May, 1862, and in the spring of 1863, was sufficient to take the plaintiff's claim out of the statute of limitations. This action is brought upon three promissory notes. The notes were all barred by the statute before the interview in May, 1862. On that occasion, the plaintiff asked the defendant to renew the notes by giving a new note, or by endorsing something on them. The defendant declined to renew the notes in either manner, but said : " I will come up soon, and have a general settlement of accounts, and if all accounts are all right, other matters will be all right." In the spring of 1863, the plaintiff again asked the defendant to take up these notes and give a new one, or to endorse something on them, so as to revive them. The defendant again refused, but said : " We have a long string of accounts to look over. If I find that all right and satisfactory, the notes will be all right." The declarations made on the two occasions are substantially the same. These declarations may be regarded as a recognition of an original indebtedness by reason of the notes, but they do not contain an express promise to pay, either absolute or conditional. Will the law imply a promise therefrom ? In *Phelps* v. *Stewart*, 12 Vt., 256, it was held that to prevent the operation of the statute, there must be an acknowledgment of the debt as still due, with an apparent willingness to remain liable for it, or at least without any avowed intention to the contrary. The acknowledgment of an original indebtedness is not sufficient. *Brainerd* v. *Buck*, 25 Vt., 573. The acknowledgment must be such that a promise to pay the debt can be implied from it. The naked acknowledgment of an existing indebtedness is not sufficient, as that is consistent with a refusal to pay or a determination to take advantage of the statute. The acknowledgment must be of such a character, or made under such circumstances as to indicate, or to be consistent with, a willingness to remain or be held liable for the debt. This is substantially the rule as recognized in all the cases since that of *Phelps* v. *Stewart*, and especially in *Moore* v. *Stearns*, 33 Vt., 308, where Judge KELLOGG fully collates all the cases in this state.

In this case, at the time the plaintiff called upon the defendant, in May, 1862, both parties understood that the notes were barred by the statute, and that the defendant was discharged from all legal liability upon them. When asked by the plaintiff to renew his liability, he refuses; thus denying his present liability, and showing a determination not to become liable. At the same time he says, if, on looking over our accounts, I find all right, your notes will be all right, he does not promise to pay the notes, if he finds the accounts right, or to make the notes right, or to do anything in respect to them. Suppose at the time he had said the notes are all right, but I won't renew my obligation to pay them, certainly no promise to pay them could be implied from such a statement. The whole declaration would have been inconsistent with such a promise. So of the declaration which he did make, when taken in connection with his refusal to renew the notes, which was at the same time, he may have considered the notes all right, or that they would be all right, for the very reason that they were barred by the statute. We think it manifest from the whole taken together, that he did not intend to renew his obligation to pay the notes; and the plaintiff must have so understood it. This is shown by his second application to the defendant to renew the notes, or to do something to revive them.

There is not sufficient in this case to show that the defendant acknowledged a then existing liability or indebtedness, or a willingness to remain liable, or from which to imply a promise to pay the notes.

The judgment of the county court is affirmed.